**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EUROMARKET DESIGNS, INC. d/b/a CRATE&BARREL, an Illinois corporation, and RESTORATION HARDWARE, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HAYNES FURNITURE COMPANY INCORPORATED, a Virginia corporation, and NEW VENTURE HOLDINGS, LLC d/b/a THE DUMP, a Virginia limited liability corporation,<br><br>Defendants. | **COMPLAINT** |

For their Complaint, Plaintiffs Euromarket Designs, Inc. d/b/a Crate & Barrel ("Crate&Barrel") and Restoration Hardware, Inc. ("Restoration Hardware") (collectively, "Plaintiffs") allege as follows:

<u>**NATURE OF CASE**</u>

1.        This is an action by Crate & Barrel and Restoration Hardware, well-known retailers of high-quality home furnishings, against the owners of "The Dump," a chain of discount furniture stores, for false advertising, trademark infringement, false designation of origin and other related claims.  The Dump is engaged in false advertising to mislead consumers into believing that The Dump sells the same furniture as Crate & Barrel and Restoration Hardware (or furniture of comparable quality) for substantially lower prices. The Dump is also engaged in trademark infringement and unfair competition by confusing and deceiving consumers into believing that there is an affiliation or relationship between The Dump, on the

1

one hand, and Crate & Barrel and Restoration Hardware, on the other hand. The Dump is tarnishing the goodwill and reputation of Crate & Barrel and Restoration Hardware by prominently associating them with "The Dump" – which literally means "a repository for garbage."

## JURISDICTION AND VENUE

2.     This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, Illinois state law, and the common law. This Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1367(a).

3.     Defendants are subject to personal jurisdiction in this district because they own and operate a location of "The Dump" in this judicial district, they engaged in conduct that is the subject of this action in this judicial district, and they have targeted and caused injury to Crate & Barrel and Restoration Hardware in this judicial district.

4.     Venue is proper in this judicial district under 28 U.S.C. § 1391, because, among other things, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, namely, the Defendants' unlawful conduct described below.

## THE PARTIES

5.     Plaintiff Euromarket Designs, Inc. d/b/a Crate & Barrel (defined above as "Crate & Barrel) is an Illinois corporation with its principal place of business at 1250 Techny Road, Northbrook, Illinois 60062.

6.     Plaintiff Restoration Hardware, Inc. (defined above as "Restoration Hardware") is a Delaware corporation with its principal place of business at 15 Koch Road, Corte Madera, California 94925.

7.      Defendant Haynes Furniture Company Incorporated ("Haynes") is a Virginia corporation with its principal place of business at 5324 Virginia Beach Boulevard, Virginia Beach, Virginia 23462.

8.      Defendant New Venture Holdings, LLC ("New Venture") is a Virginia limited liability corporation with its principal place of business at 5324 Virginia Beach Boulevard, Virginia Beach, Virginia 23462.

9.      Upon information and belief, Defendants Haynes and New Venture own and operate The Dump, a chain of discount furniture stores.  (For convenience, the Defendants will be jointly referred to as "Defendants" or "The Dump.")

## FACTS COMMON TO ALL CLAIMS

### Background on Crate & Barrel

10.      Crate & Barrel is a world-renowned purveyor of upscale furniture and home furnishings.  Crate & Barrel sells a wide variety of home furnishings, including furniture, lighting, bed, bath, kitchen, housewares and other products primarily under the CRATE & BARREL mark and other marks.

11.      Crate & Barrel began as a family-owned business in Chicago in 1962.  Over the past 52 years, Crate & Barrel has expanded to 85 retail stores in the United States, plus stores in Canada, Mexico, Singapore and the United Arab Emirates.

12.      Crate & Barrel's channels of distribution include retail stores, catalogs, and the Internet.  Crate & Barrel has distributed millions of print catalogs in the United States.  Crate & Barrel's website at <CrateandBarrel.com> has received millions of visits.  Tens of millions of U.S. residents have been exposed to the CRATE & BARREL mark.

13.     As the result of Crate & Barrel's long, extensive, and widespread use of the CRATE & BARREL mark, Crate & Barrel has acquired common law rights in the CRATE & BARREL mark in connection with home furnishings and other related products.

14.     In addition to its common law rights, Crate & Barrel owns several trademark registrations for the CRATE & BARREL mark on the Principal Register of the United States Patent and Trademark Office, including the following:

| Mark | Reg. No. | Reg. Date | Goods/Services |
|------|----------|-----------|----------------|
| Crate&Barrel | 1469514 | Sept. 22, 1987 | "Retail store and mail order services supplying" a number of goods, including "furniture", in Class 42. |
| CRATE & BARREL | 2205822 | Nov. 24, 1998 | "Furniture" in Class 20. |
| CRATE & BARREL | 2205823 | Nov. 24, 1998 | "Retail store and mail order services supplying furniture," in Class 35. |

True and accurate copies of the registration information for these marks are attached hereto as Exhibit A.  These federal trademark registrations are incontestable pursuant to 15 U.S.C. § 1065, and have not been abandoned, canceled, or revoked.  (Crate & Barrel's registered and common law trademark rights in the CRATE & BARREL mark are collectively referred to as the "CRATE & BARREL Mark.")

**Background on Restoration Hardware**

15.     Restoration Hardware is an innovative and popular luxury brand in the home furnishings marketplace.  Restoration Hardware designs, manufactures and sells a wide variety of home furnishings, including furniture, lighting, bed, bath, hardware, and other products primarily under the RESTORATION HARDWARE mark.

16.     Restoration Hardware was founded in Eureka, California, in 1980.  Over the past 34 years, RH has grown to 70 retail stores and 13 outlets throughout the United States, plus stores in Canada.

4

17.     Restoration Hardware's channels of distribution include retail stores, catalogs (known as "source books"), and the Internet.  Restoration Hardware has distributed more than 32 million catalogs throughout the United States.  Restoration Hardware's website at <RestorationHardware.com> has received more 18.9 million unique visits.  Tens of millions of U.S. residents have been exposed to the RESTORATION HARDWARE mark.

18.     Upon information and belief, as a result of Restoration Hardware's long, extensive, and widespread use of the distinctive RESTORATION HARDWARE mark, Restoration Hardware has acquired common law rights in the RESTORATION HARDWARE mark in connection with home furnishings and other related products.

19.     In addition to its common law rights, Restoration Hardware owns several trademark registrations for the RESTORATION HARDWARE mark on the Principal Register of the United States Patent and Trademark Office, including the following:

| Mark | Reg. No. | Reg. Date | Goods and Services |
|---|---|---|---|
| RESTORATION HARDWARE | 2048579 | April 1, 1997 | "Retail store services featuring furniture, accessories and hardware," in Class 42. |
| RESTORATION HARDWARE | 4188892 | August 14, 2012 | "Furniture" in Class 20, among numerous other goods and services. |
| RESTORATION HARDWARE | 4342527 | May 28, 2013 | "Retail store services, catalog mail-order services, and online retail store services featuring a wide range of consumer goods," including "furniture," in Class 35. |

True and accurate copies of the registration information for these marks are attached hereto as Exhibit B.  Registration No. 2,048,579 is incontestable pursuant to 15 U.S.C. § 1065 and none of the referenced registrations have been cancelled, abandoned, or revoked.   (Restoration Hardware's registered and common law trademark rights in the RESTORATION HARDWARE mark are collectively referred to as the "RESTORATION HARDWARE Mark".)

5

**<u>Defendants' Unlawful Conduct</u>**

20. Defendants own and operate a chain of discount furniture stores called "The Dump" with 11 locations in the United States, including in the Chicago area.

21. In commercial advertising on its website at <TheDump.com>, The Dump claims that it buys "over stocks, one-of-a-kinds, factory sell-outs, showroom models, design prototypes, all brand new." The Dump claims that it sells "Famous Brand Names" "[u]p to 80% off-price from the most respected designers and manufacturers."

22. Two of the "famous brands" that The Dump is referring to are CRATE & BARREL and RESTORATION HARDWARE. Indeed, since at least as early as March 2013, The Dump has engaged in an advertising campaign that prominently features the CRATE & BARREL Mark and the RESTORATION HARDWARE Mark. The Dump's advertisements have contained false and misleading statements that the furniture sold by The Dump stores is identical to the high-quality furniture sold by Crate & Barrel and Restoration Hardware or, at a minimum, is of comparable quality.

23. The Dump's advertisements also have prominently featured the CRATE & BARREL Mark and the RESTORATION HARDWARE Mark – often more prominently than The Dump's own mark – to trade off of the goodwill and reputation of these brands.

24. Most recently, on or about August 15, 2014, The Dump began running a national television commercial that began with the following opening screens:





25.    The Dump television ad went on to claim that it was selling furniture that was the same as or comparable to specific models of furniture that consumers could buy from Crate & Barrel and Restoration Hardware (as shown in the screen shots below) and for one third to one half off of their prices.







26.     The Dump's television ad falsely claims that The Dump is selling a sofa identical or comparable to the Restoration Hardware Kensington sofa.  The Dump's television ad also falsely claims that it is selling a bed identical or comparable to Crate & Barrel's Sierra bed.  The Dump's television ad also falsely claims more generally that it is selling furniture identical or comparable to that sold by Restoration Hardware and Crate & Barrel for one half to one third of the prices charged by Restoration Hardware and Crate & Barrel.  Upon information and belief, most if not all of the furniture referenced by The Dump are knockoffs of furniture sold by Crate & Barrel and Restoration Hardware and are inferior in quality based on objective standards.

27.     The Dump's unlawful conduct is not limited to its television ad.  On or around March 17, 2013, The Dump published the advertisement below in newspapers around the country ("March 2013 Advertisement").  (A true and accurate copy of this advertisement is attached as Exhibit C.)



8

28.     In the March 2013 Advertisement, The Dump prominently used the CRATE & BARREL Mark and the RESTORATION HARDWARE Mark, again more prominently than The Dump used its own mark.  The Dump advertisement boldly proclaimed:  "THE QUALITY OF RESTORATION HARDWARE & CRATE AND BARREL" at "45 to 65% OFF THEIR PRICES."

29.     The Dump's March 2013 Advertisement falsely claims that The Dump is selling furniture that is the same quality as furniture sold by Restoration Hardware and Crate & Barrel for 45% to 65% off of the prices charged by Restoration Hardware and Crate & Barrel.  Upon information and belief, most if not all of the furniture referenced by The Dump are knockoffs of furniture sold by Crate & Barrel and Restoration Hardware and are inferior in quality.

30.     The March 2013 Advertisement went beyond the general claim in the headline. The ad contains a large picture of a sofa followed by the statement:  "104 Inch Handmade Linen Sofa with Feather Down Seating - $3,400 at Restoration OUR Sofa $1,499."  This statement falsely represents that the sofa sold by The Dump is identical (or at least comparable) to that sold by Restoration Hardware.  Upon information and belief, the furniture referenced by The Dump is a knockoff of the sofa sold by Restoration Hardware and is inferior in quality.

31.     On or around January 19, 2014, The Dump published the advertisement below in newspapers around the country ("January 2014 Advertisement").  (A true and accurate copy of the advertisement is attached as Exhibit D.)



32.     The January 2014 Advertisement contains the headline "Dump High Markups Pay Half the Price."  The headline is followed by photos of furniture with captions following the format "Compare to Restoration Hardware $_____.  Our Price $____", where the price shown for The Dump piece is less than half the price shown for the Restoration Hardware piece.

33.     The January 2014 Advertisement falsely represents that the products sold by The Dump are identical (or, at a minimum, comparable) to those sold by Restoration Hardware for "half the  price."

34.     The Dump's CEO, E. J. Strelitz also has made false or misleading statements on The Dump's website to advertise The Dump's knockoffs.  For example, Mr. Strelitz is quoted as saying "Right now, we have a sofa that is identical to one that retails for $3,900 at Restoration Hardware in our stores for $2,295."  (A true and accurate printout of the relevant portion of the The Dump webpage from is attached as Exhibit E).  Upon information and belief, the sofa referenced was a knockoff of inferior quality.

35.     The Dump's false and misleading statements set forth above are statements of a factual nature relating to the origin, quality and pricing of the furniture referenced by the

statements. Indeed, there are objective standards for determining the quality of furniture, including, among other things, materials, construction, and finishes.

36.     Upon information and belief, The Dump's false and misleading statements have deceived or have a tendency to deceive a substantial number of consumers into believing that they can buy the particular pieces identified in the advertisements and other furniture from The Dump that is identical to or comparable in quality to that sold by Crate & Barrel and Restoration Hardware and at prices in the ranges of discounts identified.

37.     Upon information and belief, The Dump's false and misleading statements are material to consumers' purchasing decisions.

38.     Upon information and belief, The Dump's false advertising campaign has diverted sales to The Dump.

39.     Upon information and belief, The Dump's false advertising campaign has tarnished the goodwill and reputation symbolized by the CRATE & BARREL Mark and the RESTORATION HARDWARE Mark by associating the marks with primarily cheap, lower quality products and with a trademark – THE DUMP – that literally means "a site for depositing garbage."   Upon information and belief, The Dump's false advertising campaign also has tarnished the goodwill and reputation of Crate & Barrel and Restoration Hardware to the extent that consumers believe that they either are affiliated with The Dump, The Dump sells genuine Crate & Barrel and Restoration Hardware furniture for a substantially lower price, or The Dump sells furniture of comparable quality for a substantially lower price.

40.     In addition to engaging in false advertising, The Dump also has prominently featured the RESTORATION HARDWARE Mark and the CRATE & BARREL Mark in The Dump's ads in a manner that an appreciable number of consumers are likely to be confused as to an affiliation, relationship or connection between Restoration Hardware and Crate & Barrel, on

the one hand, and The Dump, on the other hand. Indeed, E.J. Strelitz, President and CEO of The Dump, proclaims on The Dump's website that "THE DUMP IS AN OUTLET FOR BRAND NAME FURNITURE" and the brand names that The Dump repeatedly advertises are Restoration Hardware and Crate & Barrel.

41.     Crate & Barrel and Restoration Hardware have sent cease and desist letters to The Dump in an effort to convince The Dump to cease its unlawful advertising campaign. The Dump has defended its actions under the ruse of "comparative advertising." Each time, The Dump attempts to avoid a lawsuit by claiming to have stopped the advertisements at issue, only to initiate new advertisements that continue to dupe consumers and violate the rights of Crate & Barrel and Restoration Hardware. For example, on April 15, 2013, in response to a letter from Crate & Barrel's counsel objecting to, among other things, The Dump's use of the CRATE & BARREL Mark in advertising, The Dump's counsel stated "[Defendants] has concluded the advertising campaign that included a reference to Crate & Barrel and has no plans to use its name in future advertisements." Crate & Barrel's counsel confirmed this statement with a letter on May 7, 2013 verifying its understanding that The Dump has "agreed to permanently cease use of the CRATE & BARREL trademark in [their] advertisements" and thanking The Dump for resolving the matter. But months later, Crate & Barrel discovered that The Dump was once again using the CRATE & BARREL Mark in advertising. Restoration Hardware had a similar experience.

42.     Despite being put on notice on multiple occasions, The Dump has continued its false advertising campaign and other tortious conduct unabated.

**COUNT ONE**
**(False Advertising under the**
**Lanham Act, 15 U.S.C. § 1125(a)(1)(B))**

43.     Plaintiffs incorporate by reference the preceding allegations as though fully set forth herein.

44.     Plaintiffs and Defendants are direct competitors in the sale of furniture.

45.     Defendants have made false and misleading statements of fact in commercial advertising or promotion in interstate commerce regarding the nature, characteristics, qualities, and/or origin of Plaintiffs' and Defendants' products and/or commercial activities.

46.     Defendants' false and misleading statements have actually deceived, or have a tendency to deceive, a substantial segment of the advertisements' audiences to form false beliefs that are material to the decision to purchase furniture from Plaintiffs and Defendants.

47.     As a proximate result of Defendants' false and misleading statements, Plaintiffs have suffered injury to their commercial interest in sales or reputation, either by direct diversion of sales from Plaintiffs to Defendants or by a loss of goodwill associated with Plaintiffs' products.

48.     Defendants' actions were and are willful and intentional acts, and were undertaken with the deliberate intent to trade on the reputation and goodwill of Plaintiffs, so as to justify the assessment of increased damages against them under 15 U.S.C. § 1117, in an amount to be determined at trial.

49.     Unless restrained by this Court, these acts will continue and will continue to cause serious and irreparable injury to Plaintiffs and their goodwill and reputation.

## COUNT TWO
### (Trademark Infringement under the
### Lanham Act, 15 U.S.C. § 1114(a))

50.     Plaintiffs incorporate by reference the preceding allegations as though fully set forth herein.

51.     Defendants' unlawful and improper actions are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association or sponsorship of Defendants' goods and/or services and falsely mislead consumers into believing that Defendants' goods and/or services are affiliated or connected with, or approved by, Plaintiffs.

52.     As a direct and proximate result of Defendants' infringement, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury to their businesses, reputations, and goodwill.

53.     Accordingly, Defendants' use of the registered CRATE & BARREL Mark and the RESTORATION HARDWARE Mark in their advertising constitutes infringement of Plaintiffs' registered trademarks, in violation of the Lanham Act, 15 U.S.C. § 1114.

54.     Defendants' acts of infringement have caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at trial.

55.     Defendants have engaged in these activities willfully, so as to justify the assessment of treble damages and attorneys' fees under 15 U.S.C. § 1117.

56.     Defendants' acts of infringement, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## COUNT THREE
### (False Designation of Origin under
### the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))

57.     Plaintiffs incorporate by reference the preceding allegations as though fully set forth herein.

58.     Defendants' use in commerce of false designations of origin are likely to cause confusion, cause mistake, or deceive consumers as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by another person.

59.     Accordingly, Defendants' activities constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

60.     Defendants' acts of infringement and unfair competition have caused Plaintiffs to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

61.     Defendants have engaged in these activities willfully, so as to justify the assessment of treble damages under 15 U.S.C. § 1117.

62.     Defendant's acts of infringement and unfair competition, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

## COUNT FOUR
### (Violation of the Illinois Consumer Fraud and
### Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 505/1)

63.     Plaintiffs and Defendants are direct competitors in the sale of furniture.

64.     Defendants have made false and misleading statements of fact that in commercial advertising or promotion in Illinois regarding the nature, characteristics, qualities, and/or origin of Plaintiffs' and Defendants' products and/or commercial activities.

65.     Defendants' false and misleading statements have actually deceived, or have a tendency to deceive, a substantial segment of the advertisements' audiences to form false beliefs that are material to the decision to purchase furniture from Plaintiffs and Defendants.

66.     As a proximate result of Defendants' false and misleading statements, Plaintiffs have suffered injury to their commercial interest in sales or reputation, either by direct diversion of sales from Plaintiffs to Defendants or by a loss of goodwill associated with Plaintiffs' products.

67.     Unless restrained by this Court, these acts will continue and will continue to cause serious and irreparable injury to Plaintiffs and their goodwill and reputation.

**COUNT FIVE**
**(Common Law Trademark Infringement**
**and Unfair Competition)**

68.     Plaintiffs incorporate by reference the preceding allegations set forth as though fully set forth herein.

69.     Defendants' use of the CRATE & BARREL Mark and the RESTORATION HARDWARE Mark constitutes a reproduction, copying, counterfeit, and/or colorable imitation of the Restoration Hardware Mark and the Crate & Barrel Mark in a manner that is likely to cause confusion or mistake or that is likely to deceive consumers.

70.     Defendants' activities complained of herein constitute forms of unfair competition under Illinois common law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants Haynes Furniture Company Incorporated and New Venture Holdings, LLC d/b/a The Dump, jointly and severally:

A.     For a preliminary and permanent injunction against Defendants and each of their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all persons in

active concert or participation with them who receive actual notice of the Order, by personal service or otherwise:

1.     Restraining and enjoining the use of the RESTORATION HARDWARE Mark and the CRATE & BARREL Mark (the "Infringed Marks"), or any other reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of the Infringed Marks without Plaintiffs' permission; the use of the Infringed Marks, or any other reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of the Infringed Marks in communications with public media distributed to or within the United States without Plaintiffs' permission; or in any other manner suggesting in any way that Defendants and/or their activities, services or products originate from, are affiliated with or authorized by Plaintiffs, or that Plaintiffs and/or their activities, services or products are affiliated in any way with Defendants without Plaintiffs' permission.

2.     Restraining and enjoining the use of any other mark, term, slogan, tagline or phrase without Plaintiffs' permission which suggests or tends to suggest in any way that Defendants and/or their activities, services or products originate from, are affiliated with, or authorized by, Plaintiffs, or that Plaintiffs or their activities, services or products are affiliated in any way with Defendants, or that the furniture sold in Defendants' store is identical, or the same as, the furniture sold in Plaintiffs' stores.

3.     Restraining and enjoining the use and/or importation in connection with any goods or services, any false or deceptive designation, description or representation, whether by words or symbols, which suggests or implies any

relationship with Plaintiffs or gives Defendants an unfair competitive advantage in the marketplace.

B.     That in accordance with 15 U.S.C. § 1118, all materials, packaging, labels, tags, pamphlets, brochures, signs, sales literature, stationery, advertisements, billboards, banners, posters, documents and the like in the possession or under the control of Defendants and their affiliates, and all plates, molds, matrices, negatives, masters and other means of making the same, which might, if used, violate the Order herein granted, be delivered up and destroyed as the Court shall direct.

C.     That in accordance with 15 U.S.C. § 1116, Defendants file with the Court and serve on counsel for Plaintiffs within thirty (30) days after service on Defendants of such Order, or within such extended period as this Court may direct, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the Order.

D.     For an award of Defendants' profits or other advantages, Plaintiffs' damages resulting from Defendants' unlawful acts set forth herein, in an amount to be proven at the time of trial, together with legal interest from the date of accrual thereof.

E.     For an award of treble damages, in an amount to be proven at the time of trial, pursuant to 15 U.S.C. § 1117.

F.     For an award of exemplary and punitive damages and/or increased profits, in an amount to be proven at the time of trial.

G.     For an award of attorneys' fees incurred by Plaintiffs in this action.

H.     For an award of costs of this action.

I.     That Plaintiffs be awarded such other and further relief as the Court may deem equitable and proper.

DATED:   October 6, 2014

Respectfully submitted,

By:  s/Michael G. Kelber
Michael G. Kelber
mkelber@ngelaw.com
NEAL GERBER EISENBERG
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602-3801
Tel: (312) 269-8000
Fax: (312) 269-1747

Michael J. McCue (*pro hac vice* pending)
mmccue@lrrlaw.com
LEWIS ROCA ROTHGERBER LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169
Tel: (702) 949-8200
Fax: (702) 949-8398

Aaron D. Johnson (*pro hac vice* pending)
adjohnson@lrrlaw.com
LEWIS ROCA ROTHGERBER LLP
4300 Bohannon Drive, Suite 230
Menlo Park, California  94025
Tel: (650) 391-1380
Fax: (650) 391-1395

*Attorneys for Plaintiffs*
*Euromarket Designs, Inc. d/b/a Crate & Barrel*
*and Restoration Hardware, Inc.*

NGEDOCS: 2204423.3

19